IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| BRANDON MCELROY, ROBERT HARRINGTON, AVERIL OWENS, MICHAEL RIDER, | § § § § | |
| *Plaintiffs,* | § § | CIVIL NO. SA-18-CV-00010-FB |
| vs. | § § | |
| TUCKER ENERGY SERVICES, INC., TUCKER ENERGY SERVICES U.S.A., INC., | § § § § | |
| *Defendants.* | § § | |

## ORDER

Before the Court in the above-styled cause of action are Plaintiffs' Motion for Conditional Certification with Incorporated Brief in Support [#13] and Plaintiffs' Motion for Approval and Distribution of Notice and for Disclosure of Contact Information [#14]. In ruling on Plaintiffs' motions, the Court has also considered Defendants' Response to Plaintiffs' Motion for Conditional Certification [#24], Defendants' Response to Plaintiffs' Motion for Approval and Distribution of Notice and for Disclosure of Contact Information [#25], Plaintiffs' Reply in Support of Plaintiffs' Motion for Conditional Certification [#26], and Plaintiffs' Reply in Support of Plaintiffs' Motion for Approval and Distribution of Notice and for Disclosure of Contact Information [#27].

This action was referred to the undersigned for pretrial proceedings pursuant to Federal Rule of Civil Procedure 72 and Rules CV-72 and 1(c) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas [#9]. The undersigned has authority to enter this order pursuant to 28 U.S.C. § 636(b)(1)(A). For the reasons set forth herein, the Court will **DENY** the motions.

1

## I.  Background

 Plaintiffs Brandon McElroy, Robert Harrington, Averil Owens, and Michael Rider bring this action on behalf of themselves and all others similarly situated against their former employer Defendants Tucker Energy Services, Inc. ("Tucker").[1]  (Compl. [#1].)  Plaintiffs seek to recover unpaid overtime compensation from Tucker pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201, *et seq.*  (*Id.* at ¶¶ 51–61.)

 Tucker is a multinational company providing a variety of services to the oil and gas industry.  (Van Buren-Schele Decl. [#24-2] at 2.)  According to Plaintiffs' Complaint, Plaintiffs worked as hourly-paid oilfield workers for Tucker within the three years preceding the filing of their Complaint and regularly worked more than 40 hours per week.  (Compl. [#1] at ¶¶ 43, 46.)  Plaintiffs identify their duties as performing manual labor at oil and gas well sites to assist in pumping and fracking the wells and claim they routinely were required to use hard hats, drilling equipment, lubricators, blow-out preventers, wrenches, and other tools in performing these duties.  (*Id.* at ¶¶ 44, 49.)

 Plaintiffs now move to conditionally certify their FLSA claims as a collective action pursuant to Section 216(b) of the FLSA.  The Court has subject-matter jurisdiction over this case based on federal-question jurisdiction, because Plaintiffs' claims arise from federal law.  *See* 28 U.S.C. § 1331.

## II.  Certification Standard

 The FLSA requires covered employers to pay non-exempt employees for hours worked in excess of defined maximum hours, 29 U.S.C. § 207(a), and allows employees to sue their

---

[1] Plaintiffs' Complaint also named Tucker Energy Services U.S.A., Inc. as a Defendant, but Plaintiffs and Defendants stipulated to the dismissal of Tucker Energy Services USA, Inc. on June 14, 2018 [#16].

employers for violation of its wage and hour provisions, *see* 29 U.S.C. §§ 215–16.  An employee may sue his employer under the FLSA on "behalf of himself . . . and other employees similarly situated."  29 U.S.C. § 216(b).  However, unlike Rule 23 class actions, collective actions proceed on an "opt-in" rather than an "opt-out" basis.  *Tolentino v. C & J Spec-Rent Servs., Inc.,* 716 F. Supp. 2d 642, 646 (S.D. Tex. 2010); *see also* 29 U.S.C. § 216(b) ("No employee shall be a party plaintiff to any such action unless he gives his consent in writing to become a party and such consent is filed in the court in which such action is brought.").  District courts have discretion to decide whether and how to issue notice for putative plaintiffs to opt-in to a FLSA collective action and to modify the proposed class if it is overly broad.  *See Hoffman-La Roche Inc. v. Sperling*, 493 U.S. 165, 172 (1989); *Baldridge v. SBC Commc'ns, Inc.*, 404 F.3d 930, 931–32 (5th Cir. 2005).

        In this circuit, there are two approaches used to guide a court's decision to certify a collective action:  the *Lusardi* approach and the *Shushan* approach.  *See Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1213–14 (5th Cir. 1995), *overruled in part on other grounds by Desert Palace, Inc. v. Costa*, 539 U.S. 90 (2003); *see also Lusardi v. Xerox Corp.*, 118 F.R.D. 351 (D.N.J. 1987); *Shushan v. Univ. of Colo.*, 132 F.R.D. 263 (D. Colo. 1990).  The *Shushan* approach embraces the Rule 23 procedure for certifying class actions, whereas the *Lusardi* approach uses a two-step process to determine whether employees are similarly situated under the FLSA.  *See Mooney*, 54 F.3d at 1213–14.  Most courts in this Circuit apply the *Lusardi* approach, and the Court will do so here.  *See Sandoz v. Cingular Wireless LLC*, 553 F.3d 913, 915 n.2 (5th Cir. 2008); *Tolentino*, 716 F. Supp. 2d at 646 (collecting cases).

        The *Lusardi* analysis involves two stages:  (1) the notice stage and (2) the decertification stage.  *See Sandoz*, 553 F.3d at 915 n.2.  At the notice stage, the court reviews the pleadings and

3

any affidavits that have been submitted to determine whether to conditionally certify the class and to give notice to potential class members. *Hernandez v. Robert Dering Constr., LLC*, 191 F. Supp. 3d 675, 680 (S.D. Tex. 2016).   A court is not to consider the ultimate merits of a given cause of action in making a decision on certification. *Walker v. Honghua Am., LLC*, 870 F. Supp. 2d 462, 465 (S.D. Tex. 2012).

Although the plaintiff's burden at the notice stage is "not onerous, neither is it invisible." *Songer v. Dillon Res., Inc*., 569 F. Supp. 2d 703, 706 (N.D. Tex. 2008).   A plaintiff still must put forth "substantial allegations that the putative class members were together the victims of a single decision, policy or plan." *Mooney*, 54 F.3d at 1214 & n.8 (citations omitted).   In making this determination, courts consider such factors as whether "(1) there is a reasonable basis for crediting the assertion that aggrieved individuals exist; (2) those aggrieved individuals are similarly situated to the plaintiff in relevant respects given the claims and defenses asserted; and (3) those individuals want to opt into the lawsuit."[2] *Tolentino*, 716 F. Supp. 2d at 647 (internal citations omitted).   After conditional certification the "putative class members are given notice and the opportunity to 'opt-in.'" *Mooney,* 54 F.3d at 1214.

With regards to the similarly-situated inquiry, Plaintiffs must demonstrate that they are similarly situated "in relevant respects given the claims and defenses asserted." *Tolentino*, 716 F. Supp. 2d at 647.   In wage and hour cases, this means the proposed class must be "similarly situated in terms of job requirements and similarly situated in terms of payment provisions." *Pedigo v. 3003 S. Lamar, LLP*, 666 F. Supp. 2d 693, 698 (W.D. Tex. 2009) (internal quotation

---

[2] Some courts have declined to enforce the third requirement.   *See, e.g.*, *Dreyer v. Baker Hughes Oilfield Operations, Inc.*, No. CIV.A. H-08-1212, 2008 WL 5204149, at *3 (S.D. Tex. Dec. 11, 2008) (citing *Tony & Susan Alamo Found. v. Sec'y of Labor*, 471 U.S. 290, 296 (1985)) ("such a requirement is at odds with the Supreme Court's command that the FLSA be liberally construed to effect its purposes").

and citation omitted).  Thus, the relevant inquiry for the court is whether the proposed class members "performed the same basic tasks as part of their employment and were subject to the same pay decisions, policies, or practices."  *Id.* (citing *Tice v. AOC Senior Home Health Corp.*, 826 F. Supp. 2d 990, 996 (E.D. Tex. 2011)).  Employees need not be "similarly situated in each and every aspect of their employment," but rather there must be simply "some identifiable facts or legal nexus" binding together the claims "so that hearing the cases together promotes judicial efficiency."  *Id.* (internal quotations omitted).

After the opt-in period has concluded and discovery is largely complete, the defendant may file a motion to decertify the collective action.  *Hernandez*, 191 F. Supp. 3d at 680.  At the decertification stage, the court makes a final factual determination on the similarly-situated question, and the court may decertify the class and dismiss the opt-in plaintiffs without prejudice.  *Mooney*, 54 F.3d at 1214.

### III.  Analysis

Plaintiffs seek to certify a class of "all current and former hourly-paid oilfield workers employed by [Tucker] at any time since January 4, 2015."  (Mot. Cond. Cert. [#13] at 1.)  The only evidence offered by Plaintiffs in support of their motion is the declaration of Plaintiff Brandon McElroy, who worked as an Equipment Operator for Tucker from 2014 through 2017. (McElroy Decl. [#13-1].)  Plaintiffs argue that this declaration demonstrates that there is a reasonable basis to believe other aggrieved individuals exist that are interested in joining this lawsuit and the proposed class is similarly situated as to pay and job duties so as to justify certifying this case as a collective action.  (Mot. Cond. Cert. [#13] at 6–10.)

Tucker responds that certification is inappropriate here, where Plaintiffs seek to certify a nationwide class of all oilfield workers, not just all Equipment Operators holding the same

position as McElroy, and have not identified a systematic pay policy that applies to all divisions of oilfield workers or a basis for certifying such an expansive class.  (Def.'s Resp. [#24].)  The Court agrees with Tucker.  Having reviewed the pleadings and McElroy's declaration, as well as the declarations of non-Plaintiff Tucker employees submitted with Tucker's response,[3] the Court finds that Plaintiffs have failed to come forth with the "substantial allegations" required to warrant certification, even under the lenient standard set forth by *Lusardi*.  *See Mooney*, 54 F.3d at 1214.

In determining whether potential plaintiffs are similarly situated, the primary issue is whether they performed the same basic tasks and were subject to the same pay decisions, policies, or practices.  *Mathis v. Stuart Petroleum Testers, Inc.*, 5:16-CV-094-RP, 2016 WL 4533271, at *2 (W.D. Tex. Aug. 29, 2016) (citing *Tice*, 826 F. Supp. 2d at 996).  Plaintiffs' allegations must be substantial, and they must be bolstered by some factual support based on the personal knowledge and experience of the representative plaintiff.  *See Mooney*, 54 F.3d at 1214 & n.8 (citations omitted); *Songer*, 569 F. Supp. 2d at 707.  Without such evidence, a Court cannot find a class-wide policy or practice such that would authorize class certification and notice.  *See Songer*, 569 F. Supp. 2d at 707–08.

Here, Plaintiffs' allegations are far from substantial, and the factual support provided to the Court is minimal.  Again, the only evidence Plaintiffs submitted to aid the Court in determining whether the proposed class is similarly situated is the declaration of McElroy.  (McElroy Decl. [#13-1]).  According to the declaration, "[t]he job of an Oilfield Worker, such as

---

[3] *See* Van Buren-Schele Decl. [#24-2] at 2 (Corporate Human Resources Manager); Massey Decl. [#24-2] at 28 (Senior Operator); Ridgway Decl. [#24-2] at 36 (Equipment Operator); Eeds Decl. [#24-2] at 44 (Equipment Operator); Schmelzer Decl. [#24-2] at 51 (Equipment Operator); Stearman Decl. [#24-2] at 59 (Equipment Operator); Eaves Decl. [#24-2] at 66 (Coil Operator); Green Decl. [#24-2] at 73 (Equipment Operator and Supervisor in Frac Division).

[Plaintiff's] job as an Equipment Operator, is a very physical and demanding job that is worked outdoors." (*Id.* at ¶ 5.) McElroy describes his "primary job duties" as "manual labor." (*Id.*) McElroy states he "maintained and operated the equipment, including pumps, used at the oilfield well sites" and "worked with chemicals." (*Id.*) No other description of McElroy's duties or employment is provided. These vague and generalized statements fail to satisfy even the modest factual showing required of Plaintiffs at this initial stage in the litigation.

Again, Plaintiffs bear the burden to demonstrate they are similarly situated to the proposed class of Plaintiffs in this case. *See Songer*, 569 F. Supp. 2d at 706. Plaintiffs have designated as the proposed class a group of all hourly-paid oilfield workers employed by Tucker at all oilfield sites nationwide. Yet Plaintiffs make no attempt to explain to the Court the structure of Tucker's workforce, the other job titles that would fall under the broad category of oilfield workers, or how Equipment Operators like McElroy share the same basic tasks as these other workers. McElroy merely makes the conclusory statement that "[a]ll Oilfield Workers performed the same duties I performed because these were the duties to be performed in providing the services Defendant offered to its customers." (McElroy Decl. [#13-1] at ¶ 6.)

Although McElroy indicates he has traveled to Tucker's well sites in Texas, Oklahoma, and Louisiana, this fact still does not establish that a nationwide class of all oilfield workers is warranted, and the declarations submitted by Tucker raise further doubts as to the similarity of the proposed class. Christina Van Buren-Schele, Tucker's Corporate Human Resources Manager, states that Tucker is divided into several distinct and unique operating divisions—stimulation, coiled tubing, and wireline—each with its own managers, supervisors, and operators. (Van Buren-Schele Decl. [#24-2] at 2.) McElroy's declaration does not identify these divisions or attempt to reconcile any differences between them. The declaration of Andrew

7

Massey, a Senior Operator in the Wireline Division, states that his division does not have an Equipment Operator position and describes the divisions at Tucker as "well separated." (Massey Decl. [#24-2] at 28–29.)  Massey describes his duties as handling explosives for the purpose of shooting perforated guns, a duty he does not believe is shared by any Equipment Operator in the Stimulation or Coiled Tubing Divisions, as they do not handle explosives or the wireline truck. (*Id.* at 29.)  The declaration of Richard Eaves, a Coil Operator in the Coil Tubing Division, states that his Division does not have Equipment Operators.  (Eaves Decl. [#24-2] at 66.)  Plaintiffs have not put forth substantial evidence that all oilfield workers, regardless of division, job title, or location, perform the same basic tasks.  *See Mathis*, 2016 WL 4533271, at *2 (W.D. Tex. Aug. 29, 2016) (citing *Tice*, 826 F. Supp. 2d at 996).

Nor is the Court convinced that the certification of a more narrow class of all Equipment Operators is appropriate, as Plaintiffs have failed to provide sufficient support for their allegation that the proposed class was subject to a single policy of denying overtime compensation. McElroy's declaration states that he and other Equipment Operators "were made to work off the clock and were not properly compensated for these hours." (McElroy Decl. [#13-1] at ¶ 9.)  Yet Plaintiffs have not submitted any other declarations aside from McElroy's.  The Court only has knowledge as to the fact that the other named Plaintiffs were also Equipment Operators like McElroy from consulting the evidence attached to Tucker's response.  Tucker submitted to the Court the declarations of five other non-Plaintiff Equipment Operators, all of whom uniformly state that they were responsible for keeping track of all hours worked, often using an app entitled Kronos to do so on their phones; that Tucker had a policy of paying overtime compensation to its Equipment Operators; and they were regularly paid for all hours worked, including "time and a half" for overtime.  (Ridgway Decl. [#24-2] at 38–40 (stating he was consistently paid for

approximately 100 hours of overtime during a "long week" and 58 hours of overtime on a "medium week"); Eeds Decl. [#24-2] at 44–47 (describing method of tracking hours worked, including overtime hours); Schmelzer Decl. [#24-2] at 51–55 (claiming he received "an exorbitant amount of overtime hours" in his position as Sand Coordinator and that he consistently received pay for all hours worked, including "extensive amount of overtime hours," as an Equipment Operator); Stearman Decl. [#24-2] at 59–61 (stating he was "always paid for all of [his] overtime hours as an Equipment Operator); Green Decl. [#24-2] at 73–78 (attesting to always being paid for overtime hours whenever he worked over 40 hours per week and never hearing any of the named Plaintiffs complaining of not being paid for hours worked.)   All five of these Equipment Operators also stated that, if there was ever an error related to performing work prior to clocking in or other issues with regular or overtime compensation, Tucker promptly fixed the issues.  (*See id.*)

In light of this record, the Court is unable to credit McElroy's sole statement that Equipment Operators were made to work overtime without compensation for purposing of conditional certifying this case as a collective action.  Plaintiffs have failed to come forth with "substantial allegations that the putative class members were together the victims of a single decision, policy or plan" of Tucker to deny its workers overtime compensation.  *See Mooney*, 54 F.3d at 1214 & n.8 (citations omitted).  Plaintiff's allegations fall short of convincing the Court that there is a nationwide class of victims subject to the same pay practice or plan, whether the expansive requested class of all oilfield workers or a more narrow class of Equipment Operators.

Finally, the Court would be remiss is not again mentioning that the declaration filed in support of Plaintiffs' motion by McElroy is virtually identical to declarations filed by Plaintiffs' counsel in other cases pending before this Court and other courts seeking conditional

certification under the FLSA.  *See, e.g.*, *Lindsey v. Schlumberger Tech. Corp.*, 5:16-CV-458-FB-ESC (Lindsey Decl. [#28-1].)  Both this Court and at least two other courts have rejected these same declarations as too generalized and conclusory to support certification.  *See Lindsey*, 2017 WL 2999428, at *4; *Mathis*, 2016 WL 4533271; *McLendon v. Schlumberger Tech. Corp.*, No. 4:15CV00752 JLH, 2016 WL 3911897 (E.D. Ark. July 15, 2016).  The language used in these declarations is insufficient for the aforementioned reasons to support certification.  As a result, this case should proceed with the four named Plaintiffs, and any other Plaintiffs that intend to join this lawsuit, for the individual recovery of any unpaid overtime compensation.  Conditional certification of a larger class of workers and the issuance of notice is not warranted at this time.  However, this denial will be without prejudice to refile an amended motion for conditional certification in the event that Plaintiffs are later able to submit more persuasive information showing that there is a class of similarly situated aggrieved individuals.

## IV.  Conclusion

Having considered Plaintiffs' motions, the responses and replies thereto, the exhibits and declarations attached, and the governing law,

**IT IS HEREBY ORDERED** that Plaintiffs' Motion for Conditional Certification with Incorporated Brief in Support [#13] and Plaintiffs' Motion for Approval and Distribution of Notice and for Disclosure of Contact Information [#14] are **DENIED WITHOUT PREJUDICE**.

SIGNED this 25th day of October, 2018.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE